Mr. William D. Moore County Attorney County of Charlotte 18500 Murdock Circle Port Charlotte, Florida 33948-1094
Dear Mr. Moore:
This is in response to your request for an Attorney General's Opinion on substantially the following question:
 IS THE BOARD OF COUNTY COMMISSIONERS OF CHARLOTTE COUNTY AUTHORIZED TO EXPEND FUNDS IN THE SPECIAL LAW ENFORCEMENT TRUST FUND ESTABLISHED BY s. 932.704, F.S., OF THE "FLORIDA CONTRABAND FORFEITURE ACT" TO CONSTRUCT A BUILDING TO BE USED BY THE SHERIFF FOR STORING EVIDENCE?
According to your letter the proposed building is to be used for storing evidence in criminal cases and it is estimated that 35% of the space within the building will be used to store contraband property confiscated by the sheriff pursuant to the "Florida Contraband Forfeiture Act."
Pursuant to provisions of the "Florida Contraband Forfeiture Act", ss. 932.701-932.704, F.S., any vessel, motor vehicle, aircraft and other personal property used in violation of the act, or in, upon, or by means of which any violation has taken or is taking place, as well as any contraband article involved in the violation, may be seized and shall be forfeited subject to provisions of the act.See, s. 932.703(1), F.S. And see s. 932.701(2), F.S., which defines "contraband article" for purposes of these statutes. All rights and interest in and title to contraband articles or property used in violation of the act immediately vest in the state upon seizure by a law enforcement agency, subject only to perfection of title, rights and interest in accordance with the act. See, s. 932.703(1), F.S. But see, s. 932.704(2), F.S., setting forth the circumstances in which owner and lienholder interests in the seized property are preserved.
The state attorney within whose jurisdiction the property has been seized, or such attorney as may be employed by the seizing agency, is required to promptly proceed against such property to have the property forfeited to the use of, or to be sold by, the law enforcement agency making the seizure. A final order of forfeiture by the court perfects the state's interests in and title to the property and relates back to the date of seizure. Section932.704(1), F.S. Following forfeiture proceedings and receipt by the state of title to the seized property, the head of the law enforcement agency, whenever he deems it necessary or expedient may, rather than retain such property, sell the property forfeited at public auction to the highest bidder for cash without appraisal. Proceeds of such a sale are to be applied according to the following formula: (1) payment of the balance due on any lien preserved by the court in the forfeiture proceedings; (2) payment of the cost incurred by the seizing agency in connection with the storage, maintenance, security and forfeiture of such property; (3) payment of court costs incurred in the forfeiture proceeding. Section 932.704(3)(a), F.S. Any remaining proceeds shall be deposited in a special law enforcement trust fund established by the board of county commissioners and the proceeds and interest earned are to be used only for law enforcement purposes. Section932.704(3)(a), F.S., further provides that:
 These funds may be expended only upon request by the sheriff to the board of county commissioners or by the chief of police to the governing body of the municipality, accompanied by a written certification that the request complies with the provisions of this subsection, and only upon appropriation to the sheriff's office or police department by the board of county commissioners or the governing body of the municipality. Such funds may be expended only to defray the costs of protracted or complex investigations; to provide additional technical equipment or expertise, which may include automated fingerprint identification equipment and an automated uniform offense report and arrest report system; to provide matching funds to obtain federal grants; or for such other law enforcement purposes as the board of county commissioners or governing body of the municipality deems appropriate and shall not be a source of revenue to meet normal operating needs of the law enforcement agency.
And see, s. 932.704(4), F.S., providing that upon the sale of such property, the state shall issue a title certificate to the purchaser or to a law enforcement agency which elects to retain titled property after forfeiture. See also, s. 932.704(3)(b), F.S., providing that if more than one law enforcement agency was substantially involved in effecting the forfeiture, the court having jurisdiction over the forfeiture proceedings shall equitably distribute the property among the seizing agencies.
As provided in s. 932.704(3)(a), F.S., the special law enforcement trust fund established by the board of county commissioners and funded by the remaining proceeds from the sale of forfeited property by the sheriff's office may only be used for law enforcement purposes. The phrase "law enforcement purposes only" is qualified by additional language in this subsection: "Such funds may be expended only to defray the costs of protracted or complex investigations; to provide additional technical equipment or expertise, which may include automated fingerprint identification equipment and an automated uniform offense report and arrest report system; to provide matching funds to obtain federal grants; or for such other law enforcement purposes as the board of county commissioners . . . deems appropriate and shall not be a source of revenue to meet normal operating needs of the law enforcement agency." Further, s. 932.704(5), F.S., provides that "[n]either the law enforcement agency nor the entity having budgetary control shall anticipate future forfeitures or proceeds therefrom in the adoption and approval of the budget for the law enforcement agency."
In AGO 83-9 this office was asked whether a board of county commissioners was authorized to use funds from the special law enforcement trust fund established by s. 932.704, F.S., to hire a physician's assistant to render medical services to prisoners at the county jail. It was concluded therein that such use of these trust funds was not authorized since furnishing medical attention and treatment to county prisoners is a continuing and ongoing or regular duty and function of the sheriff's office and is a normal operating cost of the county jail for which s. 932.704, F.S., does not countenance the use of funds from the special law enforcement trust fund. As AGO 83-9 states, "[i]t . . . appears that the legislative intent of s. 932.704, F.S., is that these trust funds should be used only for the expressly specified purposes or for other extraordinary programs and purposes, beyond what is usual, normal, regular or established." (e.s.) And see, AGO's 81-99 (funds in the special law enforcement trust fund "may not be used as a source of revenue to meet normal operating needs of the sheriff's office"); 83-30, 75-194, 75-35 and 72-346.
Space for the storing of evidence in criminal cases would appear to be one of the normal operating needs of the sheriff in carrying out the statutory duties of that office and represents a continuing, ongoing or regular duty or function thereof. See, s.932.704, F.S., setting forth forfeiture proceedings for property seized pursuant to the Florida Contraband Forfeiture Act and stating in (3)(a) thereof, that the proceeds from the sale of such property shall be applied, inter alia, to "payment of the cost incurred by the seizing agency in connection with the storage, maintenance, security, and forfeiture of such property." See also, s. 790.08, F.S., stating that weapons, electric weapons or devices, or certain arms seized pursuant to s. 790.07, F.S., shall be delivered to the sheriff of the county in which the arrest was made and such weapons or arms shall be retained by the sheriff until after the trial of the person arrested; s. 849.37, F.S., requiring that certain property seized and forfeited for use in or connection with the violation of lottery and gambling statutes be delivered to the sheriff of the county in which such property was seized and held by the sheriff pending its disposal by the court; AGO 76-133. Thus it does not appear that the storage of property as evidence in criminal cases constitutes a purpose expressly provided for in s. 932.704, F.S., nor would such activity represent an extraordinary program or purpose beyond what is usual, normal, regular or established.
Therefore, it is my opinion, unless and until legislatively or judicially determined otherwise, that the Board of County Commissioners of Charlotte County is not authorized to expend funds from the special law enforcement trust fund established by s. 932.704, F.S., to construct a building to be used by the sheriff for storing evidence.
Sincerely,
Jim Smith Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General